IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Robert Peoples, | ) | C/A No.: 1:08-3958-CMC-SVH |
| Plaintiff, | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| Cpl. Dessirene Lloyd, Sgt. Terrence Forde, Sgt. Scott Jones, Sgt. Bryan Taylor, Ofc. John Guinn, Ofc. Richard Allen, Ofc. Jason Corbett, Capt. Mark Cote, Ofc. Deborah Coles, Nurse K. Hutchinson, and Lt. Brown, | ) | |
| Defendants. | ) | |

Plaintiff, who is proceeding *pro se* in this action, is an inmate at Lieber Correctional Institute. Plaintiff has asserted claims under 28 U.S.C. § 1983, alleging various claims of violations of his constitutional rights.

Before the court are the following motions: (1) Defendants' Motion for Summary Judgment [Entry #65]; (2) Plaintiff's Motion for Summary Judgment [Entry #84]; (3) Plaintiff's Motion to Strike Defendants' Answer and for Default Judgment [Entry #107]; and (4) Plaintiff's Motion to Compel [Entry #112].

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of Local Civil Rule 73.02(B)(2)(d) (D.S.C.). Because the motions for summary judgment are dispositive motions, this Report and Recommendation is entered for review by the district judge.

I.   Factual and Procedural Background

Plaintiff filed his complaint in this action on December 9, 2008. The case was stayed from April 23, 2009 until July 13, 2009, while Plaintiff was treated at a mental health institution. Defendants filed a motion for summary judgment on September 15, 2009. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Defendants' Motion [Entry #66]. Plaintiff filed a response in opposition to Defendant's Motion [Entry #82]. Having carefully considered the parties' submissions and the record in this case, the court recommends Defendants' motion for summary judgment be granted, rendering moot the remaining motions.

In his complaint, Plaintiff alleges that Defendants violated the Eighth Amendment by using excessive force and by acting with deliberate indifference to his medical needs. Specifically, Plaintiff claims that Defendant Lloyd falsely accused him of masturbating and sprayed him with a chemical agent. (Compl. 3). A few minutes later, Plaintiff was told he was being "stripped out" (i.e. his cell was being stripped of his property). (*Id.*) Plaintiff admits Defendant Forde requested that Plaintiff back up to be cuffed before the cell was stripped and Plaintiff refused. (Compl. 4). A forced cell movement team was assembled and restrained Plaintiff. Plaintiff alleges that during the forced cell movement, Defendants clawed at his eyes, punched his face and head, and "started jumping up and down on my back and the back of my legs with their knees." (Compl. 4–5). He further

alleges that he was carried out of his cell "while being choked with the towel [he] had around his neck" and was then dropped face down on the ground. Plaintiff alleges Defendant Taylor at one point "took his boot and step down on the back of my neck with all his weight smashing my face to the ground." Plaintiff claims Defendants removed all of Plaintiff's property from his cell and he was deprived of his property for over 72 hours. Once he was allowed to return to his cell, Plaintiff claims his back gave out from the pain, causing him to fall on the floor. Plaintiff admits that Nurse Hutchinson came to his cell to examine him, but claims she stated he "looked O.K." and left. (Compl. 6).

Defendants' recitation of the facts is markedly different from Plaintiff's. According to Defendants, while conducting a cell count, Defendant Lloyd observed Plaintiff standing in his cell masturbating with his left leg on the sink and his right leg on the wall. Defendants claim Plaintiff refused Defendant Lloyd's direct orders to cease his behavior. Because his behavior continued unabated, she discharged chemical munitions briefly into his facial area. (Defs. Br. at 1). Pursuant to institutional policy, Defendant Lloyd contacted Defendant Forde, who attempted to strip Plaintiff's cell for inventory purposes. (*Id.*) Plaintiff refused to cooperate with his directives to approach the cell window to be handcuffed, so a forced cell movement team was assembled and activated. (See Lloyd and Cote Affs.). Dessirene Lloyd was part of that team, though she was not assigned a body part for physical control because she had been involved in the incident that precipitated the forced cell movement. (*Id.*)

According to Defendants, the forced cell movement was carried out according to institutional policy and Plaintiff was not punched, kicked, held down on the floor and abused, or otherwise injured. (*Id.*) During the cell strip and inventory, a homemade weapon consisting of a razor blade melted to a toothbrush handle was discovered. (*Id.*) Plaintiff was thereafter stripped of his property for 72 hours, and charged in accordance with his behavior. (*Id.*)

Peoples was examined by medical after the forced cell movement and was found to have even, unlabored respirations and no shortness of breath; he was instructed to wash his eyes. He was not found to have any injuries. (*Id.*)

## II. Standard of Review

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim. *Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990). Nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to

the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e); *see also Celotex v. Catrett*, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. *See* Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the *Celotex* case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. *Celotex*, 477 U.S. at 322-323.

III.    Analysis

    A.    Excessive Force

In an excessive force case, a claimant must meet a heavy burden to satisfy the subjective component of the claim; specifically, he must prove that correctional officers applied force "maliciously and sadistically for the very purpose of causing harm" rather than in a good-faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986); *see also Wilkins v. Gaddy*, --- U.S. ----, 130 S.Ct. 1175 (2010). The objective component of an excessive force claim is not nearly as demanding, however,

because "'[w]hen prison officials maliciously and sadistically use force to cause harm' ... 'contemporary standards of decency are always violated ... whether or not significant injury is evidence. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.'" *Wilkins*, 130 S.Ct. at 1179 (quoting *Hudson v. McMillan*, 503 U.S. 1, 7 (1992)).

The Supreme Court has directed that several factors should be balanced in determining whether prison officials acted maliciously and sadistically. These factors include (1) the necessity for the application of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the injury actually inflicted; (4) the extent of the threat to the safety of the staff and prisoners, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) the efforts taken by the officials, if any, to temper the severity of the force applied. *Whitley*, 475 U.S. at 321.

After applying the *Whitley* factors to the facts at hand, the record is insufficient to establish a claim for excessive force. Here, Defendants' use of force was necessary, as the record demonstrates Plaintiff failed to follow direct orders. First, Defendant Lloyd sprayed a small amount of chemical munition to Plaintiff after he failed to follow her directives to stop masturbating. Although Plaintiff denies he was masturbating, he has presented no evidence in support of his denial and the record contains an incident report

of the matter. (*See* Entry #65-3). Further, the forced cell movement was justified, as Plaintiff admits he refused to follow directives to allow Defendants to handcuff him.

The record also shows that there was a relationship between the need for force and the amount of force used. With regard to the chemical spray, Plaintiff was sprayed with a small amount (5.8 grams) and does noes not dispute Defendants' assertions that he was allowed to wash it out. With regard to the forced cell movement, Plaintiff has not supported his allegations that he was punched, abused, or that Defendants "jumped up and down on his back" with any evidence beyond his own allegations, whereas the record contains documentation that Plaintiff was checked by medical and no injuries were found. (*See* Entry 65-3). The record shows that Plaintiff's breathing was even and unlabored and there was no shortness of breath. (*Id.*) The records also indicate that while Plaintiff was resistant to moving his neck on January 22, 2008 (*See* Entry #82-13 at 6), Plaintiff had a full range of motion in his neck when he was not aware he was being watched on January 25, 2008. (*See* Entry #65-3 at 3). In addition, any injuries Plaintiff sustained were not extensive, as his complaints of injury were similar to those he complained of on January 16, 2008, four days prior to the incident at issue. (*See* Entry #82-13 at 1 and 5 (Plaintiff complaining of eye injury, blurry vision, and a sore right shoulder on 1/16/08 and similar complaints on 1/25/08)). Furthermore, any alleged neck injuries appeared to be healed within a few days, as Plaintiff was observed with a full range of motion in his neck on January 25, 2008, when he was not aware he was being watched.

Defendants reasonably perceived a threat to the safety of the staff and others because Plaintiff was refusing to follow direct orders. The record also indicates that Plaintiff was promptly checked by Nurse Hutchinson following the incident. Therefore, after balancing the *Whitley* factors, and based on the record presented, Plaintiff has failed toestablish a claim for excessive force against Defendants and Plaintiff's claim should be dismissed.

B.    Medical Indifference

Plaintiff also alleges Defendants treated him with deliberate indifference to his serious medical needs. In the case of *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," *Id.* (quoting *Gregg v. Georgia*, 428 U.S. 153, 169-73 (1976)). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain,"proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

*Estelle*, 429 U.S. at 103-105 (citations and footnotes omitted). Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was

careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." *Id.* at 851 (citations omitted). Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. *Estelle*, 429 U.S. at 102–103; *Farmer v. Brennan*, 511 U.S. 825 (1994); *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir. 1986).

Further, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. *Estelle*, 429 U.S. at 105–106. Negligence, in general, is not actionable under 42 U.S.C. § 1983. *See Daniels v. Williams*, 474 U.S. 327, 328-36 & n. 3 (1986); *Davidson v. Cannon*, 474 U.S. 344, 345-48 (1986); *Ruefly v. Landon*, 825 F.2d 792, 793-94 (4th Cir.1987); *see also Pink v. Lester*, 52 F.3d 73, 78 (4th Cir. 1995)

(applying *Daniels* and *Ruefly*: "The district court properly held that Daniels bars an action under § 1983 for negligent conduct.").

Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law. *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 200-03 (1989). Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. *Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *see also Brooks v. Celeste*, F. 3d 125 (6th Cir. 1994) ("Although several courts prior to the Supreme Court's decision in *Farmer v. Brennan*, *supra*, held that 'repeated acts of negligence could by themselves constitute deliberate indifference, *Farmer* teaches otherwise."); *Sellers v. Henman*, 41 F.3d 1100, 1103 (7th Cir. 1994) ("If act A committed by the X prison shows negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty of deliberate indifference."); *White v. Napoleon*, 897 F.2d 103, 108-109 (3rd Cir. 1990); *Smart v. Villar*, 547 F.2d 114 (10th Cir. 1976) (affirming summary dismissal).

Although the Constitution requires that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice. *Jackson v. Fair*, 846 F. 2d 811, 817 (1st Cir. 1988). Although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. *See Brown v. Thompson*, 868 F. Supp. 326 (S.D. Ga. 1994). Further, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. *See Smart v. Villar*, 547 F. 2d 112 (10th Cir. 1976); *Lamb v.*

*Maschner*, 633 F. Supp. 351, 353 (D.Kan. 1986). Mistakes of medical judgment are not subject to judicial review in a § 1983 action. *Russell v. Sheffer*, 528 F. 2d 318, 319 (4th Cir. 1975).

Here, Plaintiff admits he was checked by Nurse Hutchinson following the incident who found that his breathing was even and unlabored and he had no shortness of breath. Plaintiff does not dispute that he was allowed to wash his face and eyes to prevent any damage from the chemical munition spray. Therefore, although Plaintiff may disagree about the proper treatment after this incident, Plaintiff has not established a claim for deliberate indifference to Plaintiff's serious medical needs against Nurse Hutchinson.

Also pertinent to the case at hand, any claims of medical indifference as to Defendants should be dismissed as no Defendant other than Nurse Hutchinson is considered medical personnel and Plaintiff has not shown any Defendant interfered with his medical care. The Fourth Circuit has held that to bring a claim alleging the denial of medical treatment against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. *Miltier v. Beorn*, 896 F.2d 848 (4th Cir.1990). Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. *Id.*

Under these principles and based on the evidence presented, there has been no deliberate indifference shown to the overall medical needs of Plaintiff. For the above stated reasons, summary judgment should be granted in favor of Defendants on this issue.

C. Plaintiff's Due Process Claim

Plaintiff also asserts that his due process rights were violated by being stripped of his property. Deprivation of property for a limited period does not constitute an atypical and significant hardship on Plaintiff in relation to the ordinary incidents of prison life, and therefore does not implicate a constitutionally-protected liberty interest. *See Sandin v. Connor*, 515 U.S. 472, 478 (1995) (The "Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner"). Therefore, Plaintiff has not established a violation of his due process rights.

D. Qualified Immunity

Defendants also assert that they are entitled to qualified immunity in their individual capacities. The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000).

Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998). As discussed above, Plaintiff has failed to present sufficient evidence to support his constitutional violation allegations. Nevertheless, *assuming arguendo* that Plaintiff has presented sufficient evidence of a constitutional violation, Defendants are entitled to qualified immunity from suit.

In *Maciariello v. Sumner*, 973 F.2d 295 (4th Cir. 1992), the Fourth Circuit further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

*Maciariello*, 973 F.2d at 298.

In the instant case, Plaintiff has failed to establish any theory of liability upon the part of Defendants, and, furthermore, Plaintiff has failed to establish the existence of any constitutional deprivation. However, if the court were to find that Plaintiff has established some theory of liability upon the part of Defendants, and therefore, the existence of a

constitutional deprivation, Defendants are still entitled to qualified immunity. The record before the court shows that as to Plaintiff and the specific events at issue, these Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion. They did not transgress any statutory or constitutional rights of Plaintiff that they were aware of in the discretionary exercise of their respective professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, these Defendants are entitled to qualified immunity.

IV. Conclusion

For the reasons discussed above, it is recommended that Defendants' Motion for Summary Judgment [Entry #65] be granted and this case be dismissed in its entirety. If the district judge accepts this recommendation, all other pending motions will be moot.

IT IS SO RECOMMENDED.

August 2, 2010  Shiva V. Hodges
Florence, South Carolina  United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**